## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **LILLIAN EASLEY,** and all other similarly situated,[1] <br> **Plaintiffs,** <br><br> v. <br><br> **WLCC II, d/b/a Arrowhead Advance,** <br> **Defendant.** | ) <br> ) <br> ) <br> )    CIVIL ACTION 1:21-00049-KD-MU <br> ) <br> ) <br> ) <br> ) |

### ORDER

This matter is before the Court on Plaintiff's petition or motion to confirm arbitration award embedded in her Complaint (Doc. 1-2); and Defendant's motion to dismiss for improper venue and to compel arbitration (Doc. 2), Plaintiff's Opposition (Doc. 6), and Defendant's reply (Doc. 10).[2]

**I.     Factual Background**

This action stems from an individual payday loan case that was fully and finally arbitrated and which resulted in an October 8, 2020 award in favor of Plaintiff Lillian Easley (Easley) and against Defendant WLCC II, d/b/a Arrowhead Advance (WLCC).

Specifically, from August 9, 2018 to November 26, 2019, Easley obtained 10 individual small loans online (in varying amounts ($200 to $950) and interest rates (596% to 650%) from WLCC. Easley executed contracts for each loan. (Doc. 2-1 at 1-123). The total amount borrowed by Easley was $5,250 and the finance charges imposed total $14,529.02. Each of the loan contracts that Easley signed contained an arbitration agreement designating the American Arbitration Association (AAA) as the arbitral forum, as well as the following terms and conditions:

---

[1] Plaintiff has initiated this action as a purported class action. No class has been certified. WLCC disputes that this action can proceed as a class action.

[2] The Court declines to adopt the report and recommendation. (Doc. 13)

> WAIVER OF JURY TRIAL AND ARBITRATION.
> \*\*\*
> **Agreement to Arbitrate.** You agree that any Dispute (defined below) will be resolved by arbitration as described below and in accordance with any applicable Oglala Sioux tribal law.
>
> **Arbitration Defined.** Arbitration is a means of having an independent third party resolve a Dispute. A "Dispute" is any controversy or claim between you and Lender, its marketing agent, collection agent, any subsequent holder of this Note, or any of their respective agents, affiliates, assigns, employees, officers, managers, members or shareholders (each considered a "Holder" for purposes of this Agreement). The term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands (whether past, present, or future, including events that occurred prior to the opening of this Account), based on any legal or equitable theory (tort, contract, or otherwise), and regardless of the type of relief sought (i.e. money, injunctive relief, or declaratory relief). A Dispute includes, by way of example and without limitation, any claim arising from, related to or based upon marketing or solicitations to obtain the loan and the handling or servicing of your account whether such Dispute is based on a tribal, federal or state constitution, statute, ordinance, regulation, or that occurred prior to the opening of this Account), based on any legal or equitable theory (tort, contract, or otherwise), and regardless of the type of relief sought (i.e. money, injunctive relief, or declaratory relief). A Dispute includes, by way of example and without limitation, any claim arising from, related to or based upon marketing or solicitations to obtain the loan and the handling or servicing of your account whether such Dispute is based on a tribal, federal or state constitution, statute, ordinance, regulation, or common law, and including any issue concerning the validity, enforceability, or scope of this loan or the Agreement to Arbitrate.
>
> You acknowledge and agree that by entering into this Arbitration Provision:
> (a) YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;
> (b) YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; and
> (c) YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.
> \*\*\*
> **Other Provisions.** This Agreement to Arbitrate will survive: (i) termination or changes in this Agreement, the Loan, or the relationship between us concerning the Loan; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of my Note, or any amounts owed on my account, to any other person or entity. This Agreement to Arbitrate benefits and is binding upon you, your respective heirs, successors and assigns. It also benefits and is binding upon us, our successors and assigns, and related third parties. The Agreement to Arbitrate continues in full force and effect, even if your obligations have been paid or discharged through bankruptcy. The Agreement to Arbitrate survives any termination, amendment, expiration, or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing. If any of this Agreement to Arbitrate is held invalid, the remainder shall remain in effect.

(Doc. 2-1 at 137-138).

On March 25, 2020, Easley initiated an arbitration proceeding against WLCC before the AAA by submitting a Statement of Claim alleging that WLCC's loan contracts violated Alabama law and were void *ab initio*. (Doc. 2-1 at 125-142). WLCC answered, and participated in the

arbitration proceeding. On October 8, 2000, the arbitrator rendered the full and final arbitration award declaring each of the WLCC loan contracts that Easley executed with WLCC void *ab initio*. (Doc. 6-1). Specifically, the arbitration award ruled that WLCC had waived any sovereign immunity, the transactions involved off-reservation commercial activities to which sovereign immunity does not apply, and because each of the loans was extended without a license under the ALSA, the loan contracts were void in their entirety and *ab inito*. (Id.) WLCC did not seek to vacate or appeal the award.

Thereafter, on December 16, 2020, Easley, on behalf of herself and all others similarly situated, filed a Complaint in the Circuit Court for Mobile County, Alabama against Defendant WLCC II, d/b/a Arrowhead Advance (WLCC)[3] asserting two (2) counts: 1) Count I -- relief on behalf of a putative class[4] of Alabama consumers alleging that WLCC has violated the *Alabama Small Loans Act* (ALSA), Ala. Code § 5-18-1, *et seq.*. by extending loans without a license; and 2) Count II -- requesting confirmation of the arbitration award that Easley obtained against WLCC and issuance of an order confirming the award and directing the Clerk to promptly enter same as final judgment (under Alabama Rules of Civil Procedure Rule 71C). (Doc. 1-2). Additionally, Easley, for herself and on behalf of a class, seeks a declaration that the loan contracts are void *ab initio* and seeks recovery of all sums collected, received, or retained by Defendant in connection with the loan contracts. (Doc. 1-2 at 2). In support, Easley alleges that WLCC extends small loans

---

3 Defendant WLCC is a tribal corporation organized under the laws of the Oglala Sioux Tribe, a federally recognized American Indian Tribe. (Doc. 1 at 4).

4 Namely: "[a]ll Alabama residents from whom Defendant collected, received or retained any sums in connection with any personal loan extended by Defendant in Alabama (wherein the actions taken by the borrower to accept the terms of the loan agreement were made within Alabama) to such resident in any principal amount less than One Thousand Five Hundred Dollars ($1,500) and within the period beginning four years preceding the filing of this Complaint to the date that the class is certified." (Doc. 1-2 at ¶31).

3

(payday loans) to consumers in Alabama via the internet with interest rates typically ranging between 200%-830% annually, but has never been licensed to extend such loans in Alabama under the ALSA.[5]  (Id. at 3).  The relief Easley seeks, via the vehicle of confirmation of her arbitration award, includes certification of her action as a class action and: 1) disgorgement of all sums WLCC has collected, received and retained in connection with the loans; 2) a declaration that WLCC's loans violate the ASLA and are void *ab initio*; 3) to enjoin WLCC from continuing to offer loans without an Alabama license; 4) actual damages; and 4) attorneys' fees/costs. (Doc. 1-2 at 10, 13).

In response, WLCC removed the case on January 29, 2021, asserting this Court has original jurisdiction per 28 U.S.C. § 1332(d) (Class Action Fairness Act (CAFA)) as this is a purported class action with at least 100 putative class members, there is diversity of citizenship,[6] and the aggregate amount in controversy exceeds $5,000,000.[7]  (Doc. 1 at 3).  On February 5, 2021, WLCC moved to dismiss Easley's case for improper venue and to compel arbitration.  (Doc. 2).

---

5  WLCC contends that it is a sovereign nation (Native American tribe) immune from such law.

6 Easley is an Alabama citizen; and WLCC is a tribal corporation organized under the laws of the Ogala Sioux Tribe, a federally recognized American Indian Tribe, with its principal place of business is in South Dakota.  (Doc. 1 at 5-6).

7 Easley borrowed $5,250 and the finance charge imposed on that amount was $14,529.02, with a total amount due under the loan contracts of $19,779.02. (Doc. 1-2). Per WLCC, Easley's method of valuing her individual claim, the value of the relief that would be realized by the putative class members is in excess of $5,000,000; and Easley seeks "return to the Class all sums collected, received or retained in connection with each loan extended to the members of the Class[]"  and to date, the amount that she seeks to have "disgorged" totals over $4,600,000. (Doc. 1 at 7; Doc. 1-4 (Decltn. Raines)).
However, simultaneously, WLCC argues that this action cannot properly proceed as a class action. (Doc. 1 at 5 at note 2).

## II. Discussion

### A. Motion/Petition to Confirm Arbitration Award: Count II

Easley requests issuance of an order confirming the October 8, 2020 arbitration award and directing the Clerk to promptly enter same as final judgment (under Alabama Rules of Civil Procedure Rule 71C, as the Complaint was filed in state court - Mobile County Circuit Court). (Doc. 1-2 at 13-14). WLCC does not object to confirmation of the award. (Doc. 2 at 2; Doc. 10 at 3, 6-7, 13).

Section 9 of the *Federal Arbitration Act* ("FAA") (9 U.S.C. § 1, *et seq.*), governs confirmation of an arbitrator's award and provides:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon **the court must grant such an order** unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9 (emphasis added). See also Frazier v. CitiFinancial Corp., LLC, 604 F.3d 1313, 1322 (11th Cir. 2010) ("...the court *must* confirm[]" (emphasis in original)). "There is nothing malleable about [the] 'must grant' [language in the FAA] which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." Hall St. Assoc., L.L.C. v. Mattel, Inc., 552 U.S. 576, 587 (2008). As summarized in Torres v. Morgan Stanley Smith Barney, LLC, 839 Fed. Appx. 328, 330 (11th Cir. 2020):

> The Federal Arbitration Act ("FAA") "imposes a heavy presumption in favor of confirming arbitration awards." Riccard v. Prudential Ins. Co. of Am., 307 F.3d 1277, 1288 (11th Cir. 2002). Under the FAA, a federal court's authority to vacate or to modify an arbitration award is limited. Gherardi v. Citigroup Global Mkts., Inc., 975 F.3d 1232, 1236 (11th Cir. 2020). Federal courts may vacate an award only in the four "very unusual circumstances" set forth in 9 U.S.C. § 10(a). Id.

The four (4) Section 10 "very unusual circumstances" are as follows: 1) the award was procured by corruption, fraud, or undue means; 2) there was evident partiality or corruption in the arbitrators, or either of them; 3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or 4) the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(a)(1-4). Moreover, the Court's review would *still* be limited even if a party argued the arbitrator exceeded his powers or applied rules inconsistent with applicable law (a Section 10(a)(4) challenge):

> ....When parties agree to arbitrate their disputes, they "opt out of the court system" and thus, have limited avenues for relief in federal court. Gherardi, 975 F.3d at 1238. .... "in § 10(a)(4) cases, our review is quasi-jurisdictional: a check to make sure that the arbitration agreement granted the arbitrator authority to reach the issues it resolved." Id.; ..... "Only if the arbitrator acts outside the scope of his contractually delegated authority -- issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract -- may a court overturn his determination." Sutter, 569 U.S. at 569 ... (quotations and alterations omitted). That an arbitrator committed an error (even a serious error) will not warrant vacatur under section 10(a)(4). Id....
>
> ***
>
> ...Whether the Panel applied its rules consistent with "applicable law" or in an arbitrary manner are legal questions that are beyond the limited scope of our judicial review. See White Springs, 660 F.3d at 1283 (declining to address arguments that the arbitration panel exceeded its power by awarding fees prohibited by federal and state law: the courts "cannot ... review the panel's award for underlying legal error."); Frazier, 604 F.3d at 1324 (concluding that arbitrariness is no basis for vacatur: the statutory grounds set forth in 9 U.S.C. § 10 are exclusive)....

Torres, 839 Fed. Appx. at 333-334. See also Gherardi v. Citigroup Global Markets, Inc., 975 F.3d 1232, 1238 (11th Cir. 2020); Barclays Capital Inc. v. Urquidi, 786 Fed. Appx. 970, 973 (11th Cir. 2019).

The takeaway then, is that "[t]here is a presumption under the FAA that arbitration awards will be confirmed[.]" Frazier 604 F.3d at 1321. "Courts are careful not to exceed this limited scope

6

of review in order to preserve the efficiency and reliability of arbitration proceedings[.]" *J.A. Jones Const. v. Flakt. Inc.,* 731 F. Supp. 1061, 1063 (N.D. Ga. 1990)). See also *Rosenweig v. Morgan Stanley & Co., Inc.,* 494 F.3d 1328, 1333 (11th Cir. 2007) (the FAA "presumes that arbitration awards will be confirmed, and judicial review of an arbitration award is narrowly limited[]"); *B.L. Harbert Intern., LLC v. Hercules Steel Co.,* 441 F.3d 905, 910 (11th Cir. 2006), *abrogated on other grounds by* CM S. E. Texas Houston, LLC v. CareMinders Home Care, Inc*.,* 662 Fed. Appx. 701 (11th Cir. 2016)) (discussing the court's limited review); *Gianelli Money Purchase Plan & Trust v. ADM Investor Servs., Inc.,* 146 F.3d 1309, 1312-1313 (11th Cir. 1998) (same). Indeed, "a motion to confirm an arbitration award is very nearly like asking a court to recognize and enforce the judgment of a different court. In that context, so long as the rendering court had jurisdiction, 'the court in which execution is sought will not look behind the judgment and reopen the case on the merits.' Jack H. Friedenthal, Mary Kay Kane, Arthur R. Miller, *Civil Procedure* § 15.7 (5th ed. 2015); *see also V.L. v. E.L.,* ––– U.S. –––, 136 S. Ct. 1017, 1020 ...(2016) (recognition of judgment not required if rendering court did not have jurisdiction)." *Gherardi*, 975 F.3d at 1237-1238.

      In this case, both parties seek confirmation of the arbitration award, there are no unusual circumstances prohibiting same, and no party seeks to vacate, modify, or correct the award.  There is also no challenge to the arbitration award, much less a Section 10(a)(4) challenge.  This means that this Court cannot look behind the arbitrator's ruling and reopen the case on the merits, but rather, must in a more routine or summary fashion, confirm the award. The FAA "imposes a heavy presumption in favor of confirming arbitration awards." *Gianelli ......,* 146 F.3d 1309, 1312..... As a result, a court's confirmation of an arbitration award is usually routine or summary. *Cullen v. Paine, Webber, Jackson, & Curtis, Inc.,* 863 F.2d 851, 854 (11th Cir.1989). As a result, a court's

confirmation of an arbitration award is usually routine or summary. Cullen v. Paine, Webber, Jackson, & Curtis, Inc., 863 F.2d 851, 854 (11th Cir.1989)." Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1288-1289 (11th Cir. 2002).  In sum,

> "There is a presumption under the [Federal Arbitration Act ("FAA")] that arbitration awards will be confirmed, and federal courts should defer to an arbitrator's decision whenever possible." Johnson v. Directory Assistants Inc., 797 F.3d 1294, 1299 (11th Cir. 2015) (quotation omitted). "Because arbitration is an alternative to litigation, judicial review of arbitration decisions is among the narrowest known to the law.'" AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc., 508 F.3d 995, 1001 (11th Cir. 2007) (quotations omitted). On a motion to vacate an arbitration award under 9 U.S.C. § 10(a), a court "may revisit neither the legal merits of the award nor the factual determinations upon which it relies." Wiand v. Schneiderman, 778 F.3d 917, 926 (11th Cir. 2015).

Floridians for Solar Choice, Inc. v. Paparella, 802 Fed. Appx. 519, 521 (11th Cir. 2020).

Thus, it is **ORDERED** that Easley's petition or motion for confirmation of the arbitration award (as embedded in Easley's Complaint at Count II) is **GRANTED,** and the October 8, 2020 arbitration award (Doc. 6-1) is **CONFIRMED.**[8]   Confirmation will be formalized via entry of a separate judgment.

B.      **Motion to Dismiss for Improper Venue and to Compel Arbitration - Count I**

Motions to dismiss based upon choice of forum clauses are properly analyzed as motions to dismiss for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure. See Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1290 (11th Cir. 1998). "An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause…." Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 (1974), quoted in Liles v. Ginn-La West End, Ltd., 631 F.3d 1242, 1250 at n.13 (11th Cir. 2011). "Unlike with a Rule 12(b)(6) motion to dismiss,

---

[8]  The arbitration award was a substantive legal conclusion award, not an award which awarded damages and/or interest.  As such, the undersigned's confirmation is similarly limited.

the Court may consider materials outside the pleadings without converting a Rule 12(b)(3) motion to dismiss to a motion for summary judgment." Id. at 1244 at n.5.

    WLCC seeks to dismiss Count I and to compel arbitration as to Count I.  As grounds, WLCC asserts the claim is subject to mandatory arbitration per the binding arbitration agreements in the loan contracts. WLCC argues that the arbitration agreements remain valid and enforceable as to Easley, noting that her arbitration demand included them, sought to enforce them, and pursuant to same she proceeded to arbitrate and obtained an award in her favor.  Moreover, WLCC notes that while the Arbiter's decision declared Easley's loan contracts with WLCC void *ab initio*, this does no impact the validity and enforceability of the arbitration agreements.

    Easley responds that because the arbitration award concluded that the loan contracts are void *ab inito*, "[b]y operation of that determination, there is no longer any agreement between the parties. There is no arbitration clause; no class waiver; and no basis whatsoever to compel Plaintiff back into arbitration." (Doc. 6 at 1).  Easley argues that the arbitration award declared the entirety of the contract void *ab initio*, thus necessarily including all of the dispute resolution provisions (arbitration agreements) such that "no aspect of the contract survives."  (Id. at 2, 9).  The Court disagrees.

    In support, Easley references three (2) Florida state court cases[9] -- none of which are binding on this Court.  (Doc. 6 at 7).  Moreover, Easley overlooks a central tenet in binding

---

[9] Plaintiff cites Niven v. GFB EN-TERPRISES, LLC, 849 So.2d 1093 (Fla. 3rd DCA 2003); Henderson v. Coral Springs Nissan, Inc., 757 So.2d 577 (Fla. 4th DCA 2000); Hy-mowitz v. Drath, 567 So.2d 540 (Fla. 4th DCA 1990). The viability of these cases to support Plaintiff's contention is also questioned considering Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 446, 126 S. Ct. 1204, 1209, 163 L. Ed. 2d 1038 (2006), wherein the Court held that "we cannot accept the Florida Supreme Court's conclusion that enforceability of the arbitration agreement should turn on 'Florida public policy and contract law.'"

precedential arbitration law: severability.  "[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445 (2006). Because an arbitration agreement is an independent, enforceable contract, even if/when the larger contract is challenged as invalid, and such may be treated as *its own contract* within a larger document. Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 70–71 (2010) ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. '[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract[]'"). See also Buckeye, 546 U.S. at 448 ("[A] court [may] enforce an arbitration agreement in a contract that the arbitrator later finds to be void."  When the validity of the contracts as a whole, and not specifically the arbitration clauses themselves, is at issue, "this case falls within the 'normal circumstances' as explained in *Prima Paint*, *Chastain*, and *Bess*, in which the parties signed a presumptively valid agreement to arbitrate any dispute, including those relating to the validity or enforceability of the underlying contract." *See* John B. Goodman Ltd. P'ship v. THF Const., Inc., 321 F.3d 1094,1096 (11th Cir. 2003) (per curiam). This means that despite the arbitration award finding that the loan contracts are void *ab initio*, the arbitration agreements within same remain enforceable as such are severable from the remainder of the contract.

  Additionally, "Plaintiff has offered no evidence that the arbitration provisions themselves are invalid for any reason other than that the contracts containing them are allegedly void. Without more, this issue must be addressed by an arbitrator. *See* Solymar Invs., Ltd., 672 F.3d at 998; Cardegna, 546 U.S. at 449." Smith v. Davison Design & Dev., Inc., 2014 WL 12610156, *4 (M.D. Fla. Feb. 28, 2014), Report & Recommendation *adopted by* 2014 WL 12617003 (M.D. Fla. Mar.

24, 2014). See also John B. Goodman Ltd. P'ship, 321 F.3d at 1098 ("[O]nce the court is satisfied that the parties actually agreed to arbitrate the dispute, it is for the arbitrator to decide whether the contract containing the valid agreement to arbitrate is itself enforceable[]"). As illustration, the Eleventh Circuit in Bess v. Check Express, 294 F.3d 1298 (11th Cir. 2002) -- an ASLA case in which the plaintiff argued deferred payment transactions were void *ab initio a*s they were illegal under same[10] -- held that the claims were required to be arbitrated, concluding that the plaintiff's attempt to challenge the "content of the contracts, not their existence" fell squarely within the "normal circumstances" where parties that have signed a presumptively valid agreement to arbitrate any disputes "including those about the validity of the underlying transaction" are required to arbitrate those disputes. The Eleventh Circuit concluded that because "allegations of illegality go to the deferred payment transactions generally, and not to the arbitration agreement specifically," an arbitrator and not a federal court should determine whether the underlying transactions are illegal and void. 294 F.3d at 1305.

Similarly, if/when there is no challenge *to the making of* the arbitration agreement in a contract, such as in Easley's arbitration, the arbitration agreement contained within a void contract still stands. See, e.g., Bess, 294 F.3d 1304 (plaintiffs argued the arbitration provisions could not be enforced because other provisions in the contracts rendered the contracts unenforceable as a whole under Alabama law, but because the plaintiffs' challenge had nothing to do with whether they assented to the contracts or the substantive validity of arbitration provisions, the court concluded that the "making of the arbitration agreement" was not at issue); Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Kean-Argovitz Resorts, 383 F.3d 512, 516 (6th Cir.

---

10 The plaintiffs in Bess alleged that deferred payment transactions are loans governed by the ASLA and that PayDay and the other defendants violated this statute by making loans to the plaintiffs without the requisite license and at usurious rates of interest.

2004) ("[A]lthough the arbitration clause is contained in a contract that the tribe contends is illegal, the tribe rightly does not argue that the illegality of the contract infects the arbitration clause[]"); Matterhorn, Inc. v. NCR Corp., 763 F.2d 866, 868-869 (7th Cir. 1985) ("[a]n arbitration clause will often be 'severable' from the contract in which it is embedded, in the sense that it may be valid even if the rest of the contract is invalid[]").

Arbitration agreements are governed by the FAA and "'[t]he principal purpose of the [...(FAA)...] is to ensure private arbitration agreements are enforced according to their terms.'" Kaspers v. Comcast Corp., 631 Fed. Appx. 779, 781 (11th Cir. 2015) (quoting AT & T Mobility LLC v. Concepcion, 563 U.S. 333 (2011)). The Eleventh Circuit has recognized the presumption in favor of arbitration requires courts to "rigorously enforce" arbitration agreements. Matthews v. Ultimate Sports Bar, LLC, 621 Fed. Appx. 569, 571 (11th Cir. 2015). To enforce an arbitration agreement, a court must only find that the party resisting arbitration entered into an arbitration agreement that is enforceable, and that the claims fall within the scope of the agreement. Lambert v. Austin Ind., 544 F.3d 1192, 1195 (11th Cir. 2008). Because of the national policy in favor of arbitration, courts throughout the Eleventh Circuit consistently enforce arbitration provisions.

Easley invoked the enforceability of the arbitration agreements when she initiated the arbitration process, her original arbitration demand also included the arbitration agreement and Easley proceeded to arbitrate under same, ultimately obtaining an award in her favor. For Easley to now seek to confirm the arbitration decision, yet simultaneously challenge the applicability of the arbitration agreement, is incongruous.

Easley's reliance on Macon County Greyhound Park, Inc. v. Hoffman, 226 So.3d 152 (Ala. 2016) to support her contention that "[t]he necessary effect of the express findings in the Award is the invalidation of the entire agreement, including the arbitration clause[]" (Doc. 6 at 9) is

misplaced.  In Macon County, the court declined to enforce any provision in a contract for gambling, as the contract was void as a matter of law.  Macon County, 226 So.3d at 169.  This is because the subject matter of the contract, gambling, is illegal. The court explained that contracts regarding crimes like gambling, selling cocaine, murder for hire, are void as a matter of law because no facts or arguments could salvage the contract.  The illegality in the current contract is the lack of a ASLA license, and the absence of such was based on WLCC's legal argument that it is a tribal organization and sovereign nation immune and exempt from licensing requirements in Alabama (with which the arbitrator disagreed).  Macon County distinguishes between a truly illegal contract versus a contract that may be void or voidable (for any reason):

> ...this is not a case in which the illegality of one provision of the contract renders the whole contract invalid. Additionally, this case does not involve a situation where a court or an arbitrator could subsequently find the "contracts" in question to be perfectly enforceable. Rather, the entire subject matter of these contracts is illegal conduct. Thus, there are no factual questions to be resolved by an arbitrator or a court before a determination can be made as to whether the contracts in question are void or voidable. Rather, it is clear that the "contracts" are void as a matter of law. To suggest that a court should enforce any provision in a contract that is based on illegal conduct and that is void as a matter of law, particularly when the agreement to arbitrate is itself based on gambling consideration, is unconscionable. What if the contract was for different illegal conduct, for example, the sale of an illegal controlled substance such as cocaine or a murder for hire? Surely, no court would enforce any part of such a contract by requiring an arbitrator to determine whether such contracts were illegal and void.

Macon County, 226 So.3d at 169.  The WLCC loan contracts are not contracts in which 'the entire subject matter ... is illegal conduct."  As noted in Macon County, "a contract to lend money" is an "inherently legal activity." Id. at 168.

Easley's proposed class action claim is based on her theory that the underlying loans are usurious and should be declared void *ab initio* as violative of the ASLA. The arbitration agreement provides that "any Dispute (defined below) will be resolved by arbitration...." Easley's claim falls

13

within the "Disputes" as defined by the arbitration agreements -- "aris[es] from, relate[s] to or [is] based upon marketing or solicitations to obtain the loan and the handling or servicing of [Easley's] account.

Upon consideration, it is **ORDERED** that WLCC's motion to dismiss and compel arbitration as to Count I of Easley's Complaint (Doc. 2) is **GRANTED,** and this action is **DISMISSED** and Easley's Count I is **COMPELLED** to arbitration.[11]

### III.     Conclusion

As such, it is **ORDERED** that: 1) the October 8, 2020 arbitration award is **CONFIRMED** such that the relief requested in Count II of Easley's Complaint is **GRANTED**; and 2) WLCC's motion to dismiss and compel arbitration (Doc. 2) as to Count I of Easley's Complaint is **GRANTED** and Easley's Count I is **COMPELLED** to arbitration.

A separate Judgment shall be issued confirming the arbitration award.

**DONE** and **ORDERED** this the **16th** day of **September 2021.**

/s/ Kristi K. DuBose
**KRISTI K. DUBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

11 Where claims alleged by a plaintiff are arbitrable (as a dispute as defined under the arbitration agreement), courts routinely dismiss the action and compel arbitration instead of staying it. See, e.g., Samadi v. MBNA Am. Bank, N.A., 178 Fed. Appx. 863, 866 (11th Cir. 2006) (affirming the dismissal of an action and compelling arbitration); Caley v Gulfstream Aerospace Corp., 428 F.3d 1359 (11th Cir. 2005).